UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ZHANG, *et al.*,

                            **Plaintiffs,**

      **vs.**                                        1:17-CV-148
                                                (MAD/TWD)

ICHIBAN GRP., LLC, *et al.*,

                            **Defendants.**

_____

APPEARANCES:                           OF COUNSEL:

**TROY LAW, PLLC**                **JOHN TROY, ESQ.**
41-25 Kissena Boulevard            **AARON B. SCHWEITZER, ESQ.**
Suite 103
Flushing, New York 11355
Attorneys for Plaintiffs

**MANN LAW FIRM, PC**          **MATTHEW J. MANN, ESQ.**
426 Troy-Schenectady             **STEPHAN R. WEISS, ESQ.**
Latham, New York 12110
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

       Plaintiffs Xue Hui Zhang, Yue Hua Chen, and Gui Yong Zhang (collectively "Plaintiffs"),

on behalf of themselves and other employees similarly situated, filed an amended complaint on

April 2, 2019, alleging numerous claims, including violations of the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL").  *See* Dkt. No. 89 at ¶¶ 91–129.  Defendants filed

an answer and counterclaims on April 18, 2019.  *See* Dkt. No. 95.  Plaintiffs filed an answer to the

counterclaims on May 9, 2019.  *See* Dkt. No. 105.  Defendants filed an amended answer on May

29, 2019.  *See* Dkt. No. 112.  Plaintiffs subsequently filed an answer to the counterclaims on June

19, 2019.  *See* Dkt. No. 120.[1]

On July 15, 2019, Magistrate Judge Thérèse Wiley Dancks ordered that the deadline for

filing a class collective certification motion was extended to September 30, 2019.  *See* Dkt. No.

122.  Currently before the Court is a motion by Plaintiffs for conditional collective certification

under 29 U.S.C. § 216(b), Court-authorized notice to similarly situated individuals, and the

disclosure of contact information for the purposes of notification.  *See generally* Dkt. Nos. 154,

155, 156.  Defendants oppose this motion.  *See* Dkt. Nos. 164, 165.

## II. BACKGROUND

On February 9, 2017, Plaintiff X. Zhang filed the complaint in this action against

Defendants Ichiban Group, LLC, Ichiban Food Services, Inc., Chen & Ju, Inc., David Ip, Shiow

Fei Ju, Shin Shii Ju, Chwon Tzu Ju, Liping Ju, Tyng Quh Ju, and Tommy Ju.  *See* Dkt. No. 1.

Plaintiff X. Zhang alleged, among other claims, numerous violations of the FLSA and NYLL.  *See*

*id.* at ¶¶ 70-120.  On December 1, 2017, this Court dismissed Plaintiff X. Zhang's claims under 26

U.S.C. § 7434 and NYLL § 162.  *See* Dkt. No. 18 at 16.  On July 26, 2018, this Court dismissed

Plaintiff X. Zhang's claims against Shin Hii Ju, Chwon Tzu Ju, and Shiow Fei Ju, stayed the

action as to Defendant Chen & Ju, Inc. due to a voluntary petition of bankruptcy, and granted

Plaintiff X. Zhang leave to amend his complaint to include allegations relating to Plaintiff Y.

Chen and Plaintiff G. Zhang.  *See* Dkt. No. 63 at 10.  This Court stayed this action as to all

Defendants on August 6, 2018, due to the previously mentioned filing of a voluntary petition of

bankruptcy by Defendant Chen & Ju, Inc.  *See* Dkt. No. 76.  This Court lifted the stay on March

---

[1] This Court will not outline the plethora of motions to strike and motions for sanctions
that have been filed by the parties in this action.

20, 2019, and ordered an amended complaint be served on Defendants by April 3, 2019.  *See* Dkt. No. 88.  This Court subsequently held on May 9, 2019, that "[a]ll motions will be made after discovery is complete."  Dkt. No. 104.

In the amended complaint, Plaintiffs allege that they were employed at a restaurant owned by Defendants.  *See* Dkt. No. 89 at ¶¶ 7–9.  Plaintiffs further allege that Defendants Ichiban Group, LLC and Ichiban Food Services, Inc., prior to May 16, 2016, "were [a] single and joint employer with a high degree of interrelated and unified operation, and shared common management, centralized control of labor relations, common ownership, common control, common website, common business purposes and interrelated business goals."  *Id.* at ¶ 35.  On or about May 16, 2016, these Defendants "closed the sale of the business" to Defendant Chen & Ju, Inc.  *Id.* at ¶ 37.  David Ip, Liping Ju, and Tyng Quh Ju are individuals who allegedly represented the businesses in the sale, and allegedly were owners and operators of the restaurant at which Plaintiffs were employed.  *See id.* at ¶¶ 35–42.

Plaintiff X. Zhang worked as a cook at a restaurant allegedly owned by Defendants.  *See* Dkt. No. 155-5 at ¶ 3.  From November 20, 2008 until December 7, 2015, Plaintiff X. Zhang alleges that he worked approximately seventy hours per week.  *See id.* at ¶¶ 7–8.  Plaintiff X. Zhang alleges that he received a salary once a month, which ranged from approximately $2,600 to $3,000.  *See id.* at ¶¶ 9–12.  Additionally, Plaintiff X. Zhang claims that he was never paid "spread-of-hours" for all days he worked over ten hours, never received a "Time of Hire" notice in English and Chinese (his primary language) "reflecting true rates of pay and payday," never received a comprehensive pay stub, and never saw a minimum wage poster.  *See id.* at ¶¶ 13–16. Plaintiff X. Zhang further alleges that he was given only fifteen minutes or less to eat meals, was

not paid minimum wage, was not informed of any tip credits taken towards minimum wage, and was never provided with any overtime compensation. *See* Dkt. No. 89 at ¶¶ 54–58.

Plaintiff Y. Chen worked as a waitress at a restaurant allegedly owned by Defendants. *See* Dkt. No. 155-8 at ¶ 5. From November 1, 2009 until December 31, 2015, Plaintiff Y. Chen alleges that she worked approximately seventy hours per week. *See id.* at ¶¶ 5–7. Plaintiff Y. Chen alleges that she received a salary once a month, which ranged from approximately $300 to $500. *See id.* at ¶¶ 8–9. Additionally, Plaintiff Y. Chen claims that she was never paid "spread-of-hours" for all days she worked over ten hours, never received a "Time of Hire" notice in English and Chinese (her primary language) "reflecting true rates of pay and payday," never received a comprehensive pay stub, and never saw a minimum wage poster. *See id.* at ¶¶ 10–13. Plaintiff Y. Chen further alleges that she was given only fifteen minutes or less to eat meals, was not paid minimum wage, was not informed of any tip credits taken towards minimum wage, and was never provided with any overtime compensation. *See* Dkt. No. 89 at ¶¶ 65–69.

Plaintiff G. Zhang worked as a "fry wok" at a restaurant allegedly owned by Defendants. *See* Dkt. No. 155-7 at ¶ 5. From March 1, 2013 to June 30, 2013, and again from September 1, 2014 to December 31, 2014, Plaintiff G. Zhang claims that he worked approximately seventy hours per week. *See id.* at ¶¶ 6–8. Plaintiff G. Zhang claims that he made a flat salary every month, which ranged from approximately $2,700 to $2,900, regardless of hours worked. *See id.* at ¶¶ 9–10. Additionally, Plaintiff G. Zhang alleges that he was never paid "spread-of-hours" for all days he worked over ten hours, never received a "Time of Hire" notice in English and Chinese (his primary language) "reflecting true rates of pay and payday," never received a comprehensive pay stub, and never saw a minimum wage poster. *See id.* at ¶¶ 13–16. Plaintiff G. Zhang further alleges that he was given only fifteen minutes or less to eat meals, was not paid minimum wage,

was not informed of any tip credits taken towards minimum wage, and was never provided with

any overtime compensation.  *See* Dkt. No. 89 at ¶¶ 76–80.

Plaintiffs allege that the conditions of their employment violated the FLSA and the NYLL.

*See id.* at ¶¶ 91–129.  Plaintiffs X. Zhang and Y. Chen ("FLSA Plaintiffs") bring their claims

individually and pursuant to the FLSA's collective action mechanism.  *See id.* at ¶ 81.  The FLSA

Plaintiffs allege that:

> All tipped and non tipped employees [for Defendants] work
> similarly long hours without a commensurate payment of overtime
> at the one and half rate for each hour worked in excess of forty (40)
> hours in a workweek.  Plaintiff's [sic] experience was not unique.
> Rather, it was part of a common policy or employment practice by
> Defendants regardless of their employees' title or role at the
> restaurant.

Dkt. No. 156 at 3.

### III. DISCUSSION

### A.    Conditional Certification Under the FLSA

The FLSA allows for collective litigation similar to that of a Federal Rule of Civil

Procedure 23 class action insofar as it permits "[a]n action ... against any employer ... by any one

or more employees for and in behalf of himself or themselves and other employees similarly

situated."  29 U.S.C. § 216(b).  "[T]he prevailing view in the Second Circuit, and other Circuits, is

that actions such as those pursuant to section 216(b) of the FLSA are not subject to Rule 23

requirements and principles."  *Vogel v. Am. Kiosk Mgmt.*, 317 F. Supp. 2d 122, 127 (D. Conn.

2005).  "In contrast to Rule 23, certification of a collective action 'requires no showing of

numerosity, typicality, commonality, or representativeness.'" *Fa Ting Wang v. Empire State Auto

Corp.*, No. 14-cv-1491, 2015 WL 4603117, *5 (E.D.N.Y. July 29, 2015) (quoting *Enriquez v.

Cherry Hill Mkt. Corp.*, No. 10 Civ. 5616, 2012 WL 440691, *1 (E.D.N.Y. Feb. 10, 2012)).

Potential plaintiffs must also affirmatively "opt-in" to the collective action. *See Fa Ting Wang*, 2015 WL 4603117, at *5.

The Second Circuit has adopted a two-stage method of certification in an opt-in collective action under the FLSA. *See Myers v. Hertz Corp.*, 625 F.3d 537, 554–55 (2d Cir. 2010). The first stage requires the court to make an initial determination whether to send a notice to "potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555 (collecting cases). To achieve conditional certification at this first stage, plaintiffs can satisfy their burden by making only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261, (S.D.N.Y. 1997)). "'Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Griffin v. Aldi, Inc.*, No. 5:16-CV-354, 2017 WL 1397320, *2 (N.D.N.Y. Feb. 22, 2017) (quoting *Amador v. Morgan Stanley & Co. LLC*, No. 11 CIV. 4326, 2013 WL 494020, *2 (S.D.N.Y. Feb. 7, 2013)).

The Second Circuit has repeatedly emphasized that the "'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' . . . but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (emphasis in original) (citing *Sbarro*, 982 F. Supp. at 261; *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see also Griffin*, 2017 WL 1397320, at *3; *Amador*, 2013 WL 494020, at *3. This is because a court's role at this stage is procedural; a court is not resolving factual disputes or deciding the substance of the merits at this time. *See Griffin*, 2017 WL 1397320, at *3. In fact, "a court should not weigh the

merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

Once a court is satisfied that the modest factual showing is met, "it conditionally certifies the class and orders notice to putative class members, who are given the opportunity to opt in." *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (citing *Rubery v. Buth–Na–Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008)).  Only at the second stage of the certification process will the district court, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Griffin*, 2017 WL 1397320, at *3 (quoting *Myers*, 624 F.3d at 555); *Cunningham*, 754 F. Supp. 2d at 644 ("This second stage-inquiry utilizes a more stringent factual determination as to whether the members of the class are, in fact, similarly situated") (internal quotation and citation omitted).  This is because, at that time, the court would be able to "examine whether the *actual* plaintiffs brought into the case are similarly situated." *Id.* (quoting *Gortat v. Capala Bros.*, No. 07-CV-3629, 2010 WL 1423018, *10 (E.D.N.Y. Apr. 8, 2010) (emphasis in original)).

Plaintiffs have moved for conditional certification only with respect to the FLSA claims, and have not asked for any certification or other class recognition with respect to their other claims at this time.  Defendants raise a number of arguments as to why Plaintiffs' motion should be denied.  The Court will address each in turn.

### *1. Conclusory Allegations*

Defendants first argue that conditional certification is inappropriate because Plaintiffs failed to meet the low burden required for conditional certification. Dkt. No. 164-1 at 3–6.[2] Defendants allege this is because Plaintiffs have relied solely on conclusory allegations and unsupported assertions in their affidavits. *See* Dkt. No. 164-1 at 5. Defendants argue that "the deficient, boilerplate affidavits signed by the Plaintiffs containing information unknown to at least some of them, are essentially uncorroborated statements lacking in sufficient proof." *Id.*[3]

Here, the Court is not persuaded that Plaintiffs' allegations are so bare and conclusory as to fail to meet the "modest" burden for conditional certification. While Plaintiffs have submitted only their own affidavits, these affidavits identify multiple other employees who have shared information about Defendants' employment practices, and indeed do provide some details about these observations or conversations. This is distinguishable from the cases Defendants rely on in support of their argument, where the plaintiffs failed to "provide any details about these observations or conversations, including when they occurred, how often they occurred, or the sum and substance of what was discussed or observed." *Brown v. Barnes and Noble, Inc.*, 252 F. Supp. 3d 255, 266 (S.D.N.Y. 2017); *see also Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264, 2014 WL 465542, *2 (S.D.N.Y. Jan. 27, 2014) (noting that the plaintiff did not "provide *any* detail as to a *single* such observation or conversation . . . [i]nstead [leaving the court with] a list of

---

[2] Plaintiffs have not numbered the pages in their Reply Memorandum. The pages cited refer to the ECF header page numbers.

[3] Defendants similarly allege that affidavits of persons "named in the purported affidavits in support as potentially similarly situated individuals conclusively rebut any allegation that they are similarly situated and potential members of the collective action." Dkt. No. 164-1 at 6. "At this procedural stage, the court does not resolve factual disputes . . . or make credibility determinations." *Griffin*, 2017 WL 1397320, at *3 (internal quotation omitted). As such, this argument fails at this stage.

generalized allegations that have been molded into a declaration which reads similarly to the complaint"). Plaintiffs have submitted three separate affidavits that meet the "modest" burden required at this phase. The affidavits, collectively, allege that Plaintiffs were subjected to a common policy by Defendants of not paying at least the minimum wage for all hours worked, and not paying overtime for all hours worked over forty hours a week. *See generally* Dkt. Nos. 155-5, 155-6, 155-7. Plaintiffs include details regarding conversations they had with other coworkers, including their names, salaries, and employment positions, as well as the general circumstances under which the conversations took place with the coworkers. *See* Dkt. No. 155-5 at ¶¶ 18–44; Dkt. No. 155-6 at ¶¶ 14–56; Dkt. No. 155-7 at ¶¶ 18–41.

As such, the Court finds that there is sufficient specificity in the affidavits to consider them for conditional certification at this stage.

### 2. Sufficiency of Affidavits

Defendants allege that the three factual affidavits submitted by Plaintiffs should be stricken by the Court because Plaintiffs do not have personal knowledge of their affidavits, the affidavits are unsworn, and the affidavits are inconsistent with prior submissions. *See* Dkt. No. 164-1 at 7–8. Defendants argue that, based on these reasons, the affidavits should be disregarded. *See id.* The Court disagrees.

Defendants purport to present Plaintiffs' deposition transcripts as proof that Plaintiffs do not have personal knowledge of the contents of their own affidavits. However, Plaintiff X. Zhang appears to have personal knowledge sufficient for the purposes of accepting his factual affidavit for this motion:

> Q:    How many pages [of your affidavit] did you review before you
>        signed the document?

9

> A:      I saw all of them, I read all of them and they translate to me.
>
> Q:      So you say you have personal knowledge of everything that's in this Affidavit.  Is that true?
>
> A:      Yes.
>
> . . . .
>
> Q:      Did you do an Affidavit in Chinese?
>
> A:      I said I say that and they write it down.

Dkt. No. 164-19 at 160:11–18, 161:9–10.  Plaintiff G. Zhang similarly appears to have personal knowledge sufficient for the purposes of accepting his factual affidavit for this motion:

> Q:      Are the words of [your affidavit] yours or somebody else's?
>
> A:      It's my word.

Dkt. No. 165-2 at 73:5–7.

Furthermore, while Defendants acknowledge "the depositions of [Plaintiff Y. Chen] had concluded before her affidavit was submitted to the Court," they also claim that they are somehow "similarly suspect." Dkt. No. 164-1 at 7.  Defendants' unsupported suspicions are insufficient to defeat Plaintiffs' motion.  Therefore, Defendants have failed to demonstrate that Plaintiffs do not have personal knowledge of the contents of their affidavits.

Defendants further argue that Plaintiffs' affidavits are "unsworn, interview responses" and are therefore unreliable.  *See* Dkt. No. 164-1 at 8.  The Second Circuit, under 28 U.S.C. § 1756, allows for "the submission of an unsworn declaration to a court if it 'is subscribed by [the declarant], as true under penalty of perjury, and dated, in *substantially* the following form: ... 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on (date).  (Signature).'" *LeBouef,*

*Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (quoting 28 U.S.C. § 1756) (emphasis in original).  If a document does not contain the exact language of section 1756, but it "substantially complies with these statutory requirements . . . [that] is all that this Section requires." *LeBouef*, 185 F.3d at 65–66.  All of Plaintiffs' affidavits contain the following language: "I, [Plaintiff], being duly sworn under penalty of perjury, deposes and state as follows"; "This document has been translated to me in my native language of Chinese and I fully comprehend the contents"; Plaintiffs' signature; the date noted by that Plaintiff; a notary stamp; a notary's signature; and the date noted by a notary.  Dkt. No. 155-5 at 1, 5, 6; Dkt. No. 155-6 at 1, 5, 6; Dkt No. 155-7 at 1, 5, 6.  Plaintiff X. Zhang similarly stated in his deposition:

> Q:      Were you sworn under oath when you signed [the affidavit]?
>
> A:      Yes.
>
> Q:      What were the words that were used when they had you swear?
>
> A:      All truth.
>
> Q:      How many pages did you review before you signed the document?
>
> A:      I saw all of them, I read all of them and they translate to me.

Dkt. No. 164-19 at 160:5–14.  Plaintiff G. Zhang stated in his deposition:

> Q:      So you did in fact put your signature on this page, your mark on this page?
>
> A:      Yeah.
>
> . . . .
>
> Q:      Did you intend to swear the contents of this document, under oath, as being true?
>
> A:      Yes.

Dkt. No. 165-2 at 72:12–14, 73:11–13.  As in *LeBouef*, the contents of Plaintiffs' affidavits contain sufficient declarations for the purposes of this Court.  185 F.3d at 65; Dkt. No. 155-5 at 1, 5, 6; Dkt. No. 155-6 at 1, 5, 6; Dkt. No. 155-7 at 1, 5, 6.

Defendants additionally argue that Plaintiffs' affidavits are contradictory with prior submissions and statements, and should be stricken.  *See* Dkt. No. 164-1 at 8.  The cases that Defendants cite to in support of this proposition are easily distinguishable from the present matter. In *Margo v. Weiss*, a district court judge "called the plaintiffs' affidavits . . . 'false.' ...  For the plaintiffs' affidavits to be true–i.e., not false, regardless of the scienter with which they were made–one would have to believe that the plaintiffs independently, yet consistently, mistook 1992 and 1993 for 1994 on more than fifty occasions, despite their counsel's warning. . . ."  *Margo v. Weiss*, 213 F.3d 55, 63 (2d Cir. 2000) (internal citation omitted).  In *Rohrbough v. Wyeth Labs., Inc.*, the Fourth Circuit determined that an affidavit that "contradicted" prior sworn deposition testimony on multiple topics should be stricken for the purposes of a motion for summary judgment.  *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.3d 970, 975–76 (4th Cir. 1990).  *Martin v. Merrell Dow Pharms., Inc.* similarly discusses the use of a contradictory affidavit at the motion for summary judgment phase.  *See Martin v. Merrell Dow Pharms., Inc.*, 851 F.3d 703, 706 (3d Cir. 1988).  The motion for summary judgment standard is different than the current standard for this Court.  As stated previously, "[a]t this procedural stage, the court does not resolve factual disputes . . . or make credibility determinations."  *Griffin*, 2017 WL 1397320, at *3 (internal quotation omitted).

Therefore, the Court finds that Plaintiffs' affidavits are sufficient for the purposes of this motion.

### 3. *Individual Defenses*

Defendants allege that "[w]here defenses are likely to be highly individualized, requiring examination into the hours worked and compensation of each employee, as in this case, conditional certification is inappropriate." Dkt. No. 164-1 at 6. The Court is not persuaded by this argument. Indeed, the cases referenced by Defendants discuss this concern at the second stage of conditional certification under the FLSA; that is, this determination takes place when the conditional class is decertified. *See Lynch v. City of New York*, No. 16-cv-5677, 2017 WL 4877425, *5 (S.D.N.Y. Oct. 27, 2017); *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 464 (S.D.N.Y. 2011); *Gregory v. Stewart's Shops Corp.*, No. 7:14-CV-33, 2016 WL 8290648, *8 (N.D.N.Y. July 8, 2016) ("In arguing that conditional certification under the FLSA should be denied in this case, the defendant relies primarily on *Zivali*, a case which granted a motion to decertify an FLSA collective, under the second stage of the *Myers* analysis. As discussed above, the more lenient standards for conditional certification, based on the first stage of the *Myers* analysis, should be applied here, notwithstanding the fact that considerable discovery has been allowed"). As such, this argument fails as this is not the Court's role at the first stage of conditional certification.

### 4. *Merits of Plaintiffs' Motion*

Defendants' allegations that Plaintiffs cannot satisfy the modest burden have been rejected above. As such, the Court will turn to the merits of Plaintiffs' allegations. Plaintiffs assert that they have made the required modest factual showing warranting conditional certification of the collective action, based on the allegations in the amended complaint and their affidavits concerning employments policies. *See* Dkt. No. 156 at 9–11; Dkt. No. 167 at 5–7. Specifically, Plaintiffs allege that there is substantial evidence that "they and all similarly situated non-exempt

13

employees employed by Defendants were subject to a common policy or plan that violated the FLSA." Dkt. No. 156 at 9.  This common policy involved Defendants not paying employees at least the minimum wage for all hours worked, and Defendants not paying overtime for all hours worked over forty hours a week.  *See id.*  According to Defendants, these allegations and affidavits are insufficient for Plaintiffs to meet their burden, even under the lenient standard that applies to conditional certification.  *See* Dkt. No. 164-1 at 4–6.

"'[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA.'" *Fa Ting Wang*, 2015 WL 4603117, at *8 (quoting *Colon v. Major Perry St. Corp.*, No. 12 Civ. 3788, 2013 WL 3328223, *6 (S.D.N.Y. July 2, 2013)). Plaintiffs allege that Defendants maintain a policy and practice of paying employees a flat salary, no matter how many hours they worked, and of later failing to pay overtime where appropriate.  In *Colon*, where these same policies and practices were alleged against the defendants, the Southern District of New York found that specific instances supporting these claims, in addition to the plaintiffs' affidavit and two other declarations, were "more than sufficient to satisfy the requirement of a 'modest factual showing' that [the plaintiff] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Colon*, 2013 WL 3328223, at *6 (quoting *Myers*, 624 F.3d at 555) (collecting cases).

Plaintiffs' affidavits support a common policy and practice of Defendants paying employees a flat salary, no matter how many hours were worked.  The affidavit of Plaintiff X. Zhang alleges that he worked approximately seventy hours a week, and was paid a flat rate once a month, regardless of hours worked (which increased three times over seven years).  *See* Dkt. No. 155-5 at ¶¶ 7–12.  The affidavit of Plaintiff Y. Chen alleges that she worked approximately

seventy hours a week, and was paid a flat rate once a month, regardless of hours worked (which increased once over six years). *See* Dkt. No. 155-6 at ¶¶ 6–9. The affidavit of Plaintiff G. Zhang alleges that he worked approximately seventy hours a week, and was paid a flat rate once a month, regardless of hours worked (which increased once over approximately two years). *See* Dkt. No. 155-7 at ¶¶ 7–10. All Plaintiffs allege that they were never paid spread-of-hours for all days in which they worked over ten hours in a workday, that they never received any comprehensive pay stubs, and never saw the required minimum wage poster. *See* Dkt. No. 155-5 at ¶¶ 13, 15, 16; Dkt. No. 155-6 at ¶¶ 10, 12, 13; Dkt. No. 155-7 at ¶¶ 13, 15, 16.

Plaintiffs' affidavits similarly support a common policy and practice of Defendants failing to pay overtime where appropriate. Plaintiffs allege that they were never told about overtime. *See* Dkt. No. 155-5 at ¶ 17; Dkt. No. 155-6 at ¶ 56; Dkt. No. 155-7 at ¶ 17. Plaintiffs further allege that they were "not paid overtime pay for overtime work." *See* Dkt. No. 89 at ¶¶ 55, 66, 77.

In his affidavit, Plaintiff X. Zhang describes the details of conversations with seven other potential opt-in plaintiffs. *See* Dkt. No. 155-5 at ¶¶ 19–43. In her affidavit, Plaintiff Y. Chen describes the details of conversations with five of the same potential opt-in plaintiffs. *See* Dkt. No. 155-6 at ¶¶ 14–48. In his affidavit, Plaintiff G. Zhang describes the details of conversations with six of the same potential opt-in plaintiffs. *See* Dkt. No. 155-7 at ¶¶ 18–40. These potential opt-in plaintiffs include kitchen workers, waiters, chefs, packers, and deliverymen. Plaintiffs' conversations with these co-workers allegedly involved the same policies and procedures of Defendants. Defendants argue that the Court should examine Eleventh Circuit precedent that "similarly situated" plaintiffs are limited to those who are similarly situated in "all material respects." *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1224 (11th Cir. 2019). This case is not relevant to the present matter. First, the case that Defendants reference is a case involving a

plaintiff asserting an intentional-discrimination claim under Title VII of the Civil Rights Act of 1964, the Equal Protection Clause, and 42 U.S.C. § 1981.  *See Lewis*, 918 F.3d at 1217.  Second, "[t]he proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated '*with respect to their allegations that the law has been violated*,' and not whether plaintiffs' job responsibilities are identical in every possible respect."  *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 WL 2873929, *5 (S.D.N.Y. Oct. 2, 2007) (emphasis in original) (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).  The current matter is distinguishable from cases that have not allowed certification for different types of employees.  *See, e.g.*, *Colon*, 2013 WL 3328223, at *7 (holding that where jobs "appear to involve markedly different pay scales, different hours and tasks, different overtime policies, and different compensation schemes . . . there is no basis for concluding that these two groups were subject to the same policy or that they share any sort of factual nexus").  Here, Plaintiffs' affidavits support, with sufficient evidence for the purposes of certification, that different employees with different positions were indeed subjected to the same policies and procedures by Defendants, did not receive overtime pay, and received a flat rate payment once a month.

However, the sufficiency of Plaintiffs' factual allegations regarding similarly situated victims of Defendants' unlawful policies does not extend to the entirety of their proposed collective of "all non-managerial employees."  *See* Dkt. No. 156 at 10–11.  "Although 'Plaintiffs' burden of proof [at the conditional certification stage] is low, it is not non-existent,' and 'certification is not automatic.'" *Lijun Geng v. Shu Han Ju Rest II Corp.*, No. 18-CV-12220, 2019 WL 4493429, *12 (S.D.N.Y. Sept. 9, 2019) (quoting *Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386, 2012 WL 1514810, *10 (S.D.N.Y. May 1, 2012)).  There is a "near-total absence of evidence concerning" any other group of non-managerial employees.  *Colon*, 2013 WL 3328223, at *7.

With respect to employees who are not cooks, kitchen workers, waiters, fry woks, packers, and deliverymen, Plaintiffs offer only "'vague, conclusory, and unsupported assertions' that 'do not suffice' for conditional certification." *Lijun Geng*, 2019 WL 4493429, at \*12 (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964, 2014 WL 5314822, \*3 (S.D.N.Y. Oct. 16, 2014)).

Accordingly, it is proper to certify a collective action for all employees who were cooks, kitchen workers, waiters, fry woks, packers, and deliverymen at this time because Plaintiffs made the required modest showing that they are similarly situated to potential opt-in plaintiffs. However, the Court will not extend the conditionally certified collective to include all non-managerial employees of Defendants.

**B.     Court-Authorized Notice**

As the Court has conditionally certified a collective consisting of cooks, kitchen workers, waiters, fry woks, packers, and deliverymen, the Court will next turn to the specifics of how notice of the collective action will be disseminated to those employees to allow them to consider opting into the litigation.  The Court will address each element of Plaintiffs' Proposed Notice, as well as Defendants' objections.

*1.  Temporal Scope of the Notice*

**a.  Notice Period**

Plaintiffs request that any notice approved by the Court provide for a three-year statute of limitations because they have alleged a willful violation of the FLSA.  *See* Dkt. No. 156 at 12–13. The statute of limitations under the FLSA is generally two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "An FLSA action is commenced for a named plaintiff upon the date the complaint is filed, and for an opt-in plaintiff in a collective action upon the date written

consent is filed with the court."  *Lijun Geng*, 2019 WL 4493429, at *16 (citing 29 U.S.C. §§ 256(a)–(b)).

District courts "'routinely' apply the three-year statute of limitations to the notice period when plaintiffs plead a willful violation of the FLSA."  *Lijun Geng*, 2019 WL 4493429, at *17 (citing *Cohen v. Gerson Lherman Grp.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010)). "In keeping with the FLSA's broad remedial purpose, because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint."  *Lijun Geng*, 2019 WL 4493429, at *17 (internal citations and quotations omitted).

Defendants only object to Plaintiffs' request for a three-year limitations period or to the keying of the period to the date of the complaint insofar as they allege that the applications are moot.  *See* Dkt. No. 164-1 at 8–9.  Defendants allege that, because the restaurant closed in May of 2016, and because some claims are based solely on theories of successor liability, that all potential opt-in plaintiffs would be time barred from asserting any claims.  *Id.*  This argument is irrelevant at this time.  At this time, Plaintiffs have alleged a willful violation of the FLSA, and because the Court has an interest in avoiding any merit-based determination at this time, the Court will allow notice to be distributed to potential opt-in plaintiffs employed by Defendants during the three years preceding the date Plaintiffs filed the complaint, pursuant to possible decertification at a later time.  *See Lijun Geng*, 2019 WL 4493429, at *17 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 416 F. Supp. 3d 317, 323 (S.D.N.Y. 2007)).

Furthermore, the Court finds that keying the look-back period to the initial complaint and not the amended complaint is appropriate "given how often equitable tolling issues emerge in FLSA cases."  *Lopes v. Heso, Inc.*, No. 16 CV 6796, 2017 WL 4863084, *6 (E.D.N.Y. Oct. 27,

2017); *see, e.g.*, *Boice v. M+W U.S., Inc.*, No. 1:14-CV-505, 2016 WL 11476964, *7 (N.D.N.Y. Sept. 7, 2016) ("The three-year notice period should run from the date that plaintiff filed his initial complaint . . . ."). "For instance, a more inclusive notice period should apply if the limitations period may be tolled because of the defendants' failure to post the workplace notices, as required by the FLSA." *Gui Zhen Zhu v. Matsu Corp.*, ___ F. Supp. 3d ___, 2020 WL 29835, *10 (D. Conn. 2020) (citations omitted). "Additionally, 'significant delay' in ruling on the conditional certification motion may warrant a more inclusive notice period because such delay provides 'a particularly strong basis for potential equitable tolling' arguments." *Id.* (quotation and other citations omitted). This Court also finds this is proper given the extended period between the filing of the initial complaint (February 9, 2017) and the filing of the amended complaint (April 2, 2019), due to the extended stay required for the bankruptcy proceeding, as discussed above. *See* Dkt. Nos. 63, 74, 76, 88.

Specific challenges to the timeliness of the claims of certain Plaintiffs can be addressed during the second phase of the collective action certification process. *See Lijun Geng*, 2019 WL 4493429, at *17. For these reasons, the notice period will extend back to February 9, 2014, three years prior to the filing of Plaintiff X. Zhang's initial complaint on February 9, 2017. *See* Dkt. No. 1.

### b. Equitable Tolling

Plaintiffs ask the Court to toll the statute of limitations in this case for (1) the time from during which the proceeding was stayed due to the bankruptcy proceeding, and (2) ninety days until the expiration of the opt-in period. Defendants object to the application of equitable tolling in any form because any resulting claims would be moot. *See* Dkt. No. 164-1 at 8–9. As

discussed previously, the Court disagrees that any claims in this case will be declared moot at this time.

Federal courts should grant equitable tolling "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and "only . . . in [ ] rare and exceptional circumstance[s], *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alteration in original) (internal quotation marks omitted). "A statute of limitations may be tolled as necessary to avoid inequitable circumstances." *Iavorski v. U.S. Immigration & Naturalization Serv.*, 232 F.3d 124, 129 (2d Cir. 2000). In determining whether equitable tolling is warranted, the Second Circuit has stated that a court "must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80–81 (internal quotation marks omitted).

Plaintiffs request that the Court toll the statute of limitations for opt-in plaintiffs wishing to join the collective action on account of procedural delay due to the Court-ordered stay while the bankruptcy proceeding was pending. *See* Dkt. No. 167 at 11–13. Plaintiffs further ask the Court to toll an additional ninety days until the expiration of the opt-in period. *See* Dkt. No. 156 at 13. Although Plaintiffs and any eventual opt-in plaintiffs may eventually be entitled to this relief, the Court finds that it is inappropriate to make such a determination at this time.

Although the Court is aware of decisions that have applied equitable tolling at the conditional certification stage, the Court believes that it is improper at this stage. Plaintiffs provide no facts or even arguments regarding existing or potential opt-in plaintiffs that reflect that these employees have been "pursuing [their] rights diligently." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). As noted by another district court in this Circuit in denying equitable tolling in

20

an FLSA suit, the equitable tolling inquiry is "a highly factual issue that depends on what and when a plaintiff knew or should have known — an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed." *Alvarado Balderramo v. Taxi Tours Inc.*, No. 15 Civ. 2181, 2017 WL 2533508, *5 (S.D.N.Y. June 9, 2017); *see also Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 659 (S.D.N.Y. 2017) (denying equitable tolling in an FLSA case because the court had no basis for granting such a request "given that there has been no showing that [potential opt-in plaintiffs'] have met the 'diligence' prong of the equitable tolling doctrine").  The opt-in plaintiffs on whose behalf equitable tolling is being sought are not currently before the Court.  Thus, this Court cannot assess whether any potential opt-in plaintiff has diligently pursued his or her rights and Plaintiffs' request thus must be denied.  *See, e.g.*, *Ramos v. PJJK Rest. Corp.*, No. 15-cv-5672, 2016 WL 1106373, *5 (S.D.N.Y. Mar. 10, 2016) (denying equitable tolling where "[p]laintiffs [ ] made no evidentiary showing as to why equitable tolling [was] warranted" but instead "merely contend[ed] that courts 'routinely grant' requests for equitable tolling in FLSA actions, and should be afforded to opt-in plaintiff's who have not brought claims for 'reasons beyond their control'") (citation omitted).

Accordingly, Plaintiffs' application for a categorical ruling tolling the statute of limitations for all opt-in plaintiffs is denied without prejudice.

### c.  Opt-In Period

Plaintiffs seek to allow potential opt-in plaintiffs to join this litigation for a period of ninety days following dispersal of the notice.  *See* Dkt. No. 154 at ¶ 4.  "'Although 'courts in this district have coalesced around a standard 60-day notice period,' a 'longer-period[ ] may be warranted when all parties consent.'" *Lijun Geng*, 2019 WL 4493429, at *17 (quoting *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 5557489, *1 (S.D.N.Y. Nov. 3, 2014)).

Because Defendants have not opposed Plaintiffs' proposed ninety-day period, the Court will grant this request.  *See Lijun Geng*, 2019 WL 4493429, at *17 (holding same).

### 2. *Content of the Notice*

Plaintiffs request that all notices or posts to potential opt-in employees' attention be in English and Chinese.  *See* Dkt. No. 154 at ¶¶ 7, 8.  Plaintiffs have designated these as "relevant languages." Dkt. No. 155-4 at ¶ 8.  This type of request has been granted in other cases, and this Court finds it reasonable and appropriate in this case in order to increase the effectiveness of the notice in reaching potential opt-in plaintiffs.  *See Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-cv-04661, 2019 WL 3759126, *12 (S.D.N.Y. July 25, 2019) (collecting cases). Accordingly, Plaintiffs are granted leave to send out notice of the collective action in English, Chinese,[4] and other languages they deem to be relevant to reach potential opt-in plaintiffs.

To determine whether a proposed notice is appropriate, "[c]ourts consider the overarching policies of the collective suit provisions and whether the proposed notice provides 'accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate.'" *Ting Qui Qui v. Shanghai Cuisine, Inc.*, No. 18 Civ. 5448, 2019 WL 6002371, *4 (S.D.N.Y. Nov. 14, 2019) (quoting *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)).  Courts have broad discretion in approving the contents of the proposed notice.  *Ting Qui Qui*, 2019 WL 6002371, at *4 (citing *Fasanelli*, 516 F. Supp. 2d at 323).

---

[4] Plaintiffs have specified that the predominant language of the collective is Mandarin.  *See* Dkt. No. 156 at 11.  If Plaintiffs believe that additional dialects are necessary to provide meaningful notice to all members of the collective, then they may also send out notice with additional translations.

Defendants object to the proposed notice in any form because any resulting claims would be moot.  *See* Dkt. No. 164-1 at 9.  Defendants' objection, as stated previously, is no longer relevant.

The Court has reviewed the proposed notice and finds that it accurately disseminates the relevant information to the opt-in plaintiffs.  In light of this, and because Defendants have made no substantive objections to the proposed notice's content, the proposed notice is approved.

Plaintiffs are authorized to disseminate the approved notice and consent forms, with appropriate translations.  Additionally, Defendants are directed to post the approved notice as per the instructions below on or before the date the approved notice will be distributed by Plaintiffs' counsel.

### 3.  *Distribution of the Notice*

Plaintiffs request that the Court authorize dissemination of the approved notice "via mail, email, text message, website or social media messages, chats, or posts," authorize Plaintiff to "publish the full opt-in notice on Plaintiffs' counsel's website," authorize the publication of a "short form of the notice . . . to social media groups specifically targeting the Chinese-speaking American immigrant worker community, to authorize Plaintiffs' counsel to "create a website where members of the Collective may review the Notice and electronically submit a Consent to Join Form," and order Defendants to post the approved notice "in all relevant languages, in a conspicuous and unobstructed location[ ] . . . and the notice shall remain posted throughout the opt-in period."  Dkt. No. 154 at ¶¶ 3, 5, 6, 7; Dkt. No. 155-4 at ¶ 12.  Plaintiffs also request that the Court order publication of the notice in social media and in newspapers at Defendants' expense should Defendants fail to furnish a full and complete list of potential opt-in plaintiffs' contact information or should more than twenty percent of the mailed notices be returned as

undeliverable. *Id.* at ¶ 8. Defendants generally object to the notice because any claims would be moot. *See* Dkt. No. 164-1 at 9. For the above mentioned reasons, this argument is rejected by the Court.

### a. Methods of Distribution

Defendants do not specifically oppose Plaintiffs' request to send notice to potential members of the collective via mail, email, and text message.[5] "Such methods of distribution are ordinarily approved, especially 'where, as here, the nature of the employer's business facilitate[s] a high turnover rate among employees.'" *Lijun Geng*, 2019 WL 4493429, at *20 (quoting *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298, 2016 WL 2658172, *16 (S.D.N.Y. May 5, 2016)). The Court also orders that distribution of notice via social media messages or chats "be allowed to the extent that Defendants possess social media usernames for potential opt-in plaintiffs, to further enhance the efficacy of notice." *Lijun Geng*, 2019 WL 4493429, at *20.

Defendants do not specifically oppose Plaintiffs' request to publish the full opt-in notice on Plaintiffs' counsel's website. In other cases in the Second Circuit, courts have granted requests for the use of a website containing the notice, as well as websites by which individuals may review and electronically submit a consent form. *See, e.g.*, *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718, 2016 WL 4718413, *9 (S.D.N.Y. Sept. 9, 2016) ("[C]ourts in this district have found that given the reality of communications today ... email notice in addition to notice by first mail is entirely appropriate. . . . The same logic supports dissemination of notice via website")

---

[5] Plaintiffs' Proposed Order has an additional request to send potential plaintiffs a reminder postcard by U.S. mail and email at the half-way point of the notice period. *See* Dkt. No. 155-4 at ¶ 11. The plaintiffs may not send more than one reminder, regardless of the method, and the reminder notices must be sent at the half-way point of the notice period. Plaintiffs will bear full cost of sending a reminder notice. *Spack v. Trans World Enter. Corp.*, No. 1:17-CV-1335, 2019 WL 192344, *15 (N.D.N.Y. Jan. 15, 2019).

(internal citation and quotation omitted); *Gawker Media LLC*, 2014 WL 5557489, at *3
(authorizing notice via "two-stand-alone websites that will give potential plaintiffs the ability to
download and submit the consent form electronically"); *Schear v. Food Scope*, 297 F.R.D. 114,
129 (S.D.N.Y. 2014) ("Plaintiffs also request permission to publish an internet website where
"FLSA Covered Employees" may submit a consent to join form electronically. . . .  Plaintiffs'
request is GRANTED").  These requests are granted.

Insofar as Plaintiffs seek to order Defendants to post a copy of the approved notice in "all
relevant languages, in a conspicuous and unobstructed location [ ] likely to be seen by all currently
employed members of the collective, and the notice shall remain posted throughout the opt-in
period, at the workplace," this request is granted.  The Court finds that this request is appropriate
and one that is routinely approved by courts in this Circuit.  *See Spack*, 2019 WL 192344, at *15
(citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 3d 445, 449 (S.D.N.Y. 2011)).
Accordingly, the Court authorizes the posting of the notice and consent form in all relevant
languages, in a common, nonpublic, easily-visible employee area at Defendants' restaurants,
including 1652 Western Avenue, Albany, New York 12203, for the entirety of the notice period.

While Defendants do not oppose, with particularity, the posting of the approved notice in
social media groups specifically targeting the Chinese-speaking American immigrant worker
community, or general posting of the notice on social media and websites (besides the exceptions
allowed above), the Court is concerned as to the reach of these notices.  "Posting on social media
and websites 'would be overbroad and not likely to materially improve the chances of notice.'"
*Qian Xiong Lin v. DJ's Int'l Buffet Inc.*, No. CV 17-4994, 2019 WL 5842798, *5 (E.D.N.Y. Nov.
7, 2019) (quoting *Gawker Media LLC*, 2014 WL 5557489, at *4).  "The potential plaintiffs herein
are 'likely to be reached and identified by other means, and any plaintiffs who cannot be reached

will not have their legal rights altered by their inaction,' whereas posting on social media and websites has the potential to prejudice Defendants." *Qian Xiong Lin*, 2019 WL 5842798, at *5 (quoting *Gawker Media LLC*, 2014 WL 5557489, at *4). Accordingly, the Court denies these requests.

Finally, Defendants oppose Plaintiffs' request to order newspaper and social media publication at Defendants' expense should Defendants fail to furnish adequate contact information or should more than twenty percent of mailed notices be returned as undeliverable; the Court finds this request premature. "'Defendants have not yet been ordered to produce contact information, and there is not any basis for concluding that they will not be able to.'" *Lijun Geng*, 2019 WL 4493429, at *20 (quoting *Genxiang Zhang*, No. 17cv7066, 2019 WL 699179, at *14 (S.D.N.Y. Feb. 5, 2019) (rejecting an identical request)). While Plaintiffs submit one page of a final report allegedly written by an employee of the Department of Labor that states that he had not been provided with "employee contact information to allow me to send letters to follow up with the other employees" as evidence that Defendants did not keep and maintain business records, the Court cannot make that inference based on this limited, and potentially unrelated, information. *See* Dkt. No. 166-5. However, if Plaintiffs have concerns regarding the adequacy of the contact information actually produced by Defendants or the deliverability of the notice, Plaintiffs may renew this request at that time.

### 4. Production of Contact Information

To facilitate notice, Plaintiffs have requested that Defendants provide–in electronic form (Excel spreadsheet)–the first and last name, last known address with apartment number (if applicable), last known phone number, last known email address, last known WhatsApp, WeChat ID and/or FaceBook usernames (if applicable), and work location, dates of employment, and

26

position for each potential opt-in plaintiff within fifteen or twenty-one days of the entry of the order.  *See* Dkt. No. 155-4 at  ¶ 12 (fifteen days); Dkt. No. 154 at 2 (twenty-one days).  Defendants only argument to the contrary is that the request for expedited notice is moot, as discussed in detail above, because any potential opt-in plaintiff would be time barred from asserting the claim.  *See* Dkt. No. 164-1 at 9.  Defendants do not object to the scope of the contact information requested by Plaintiffs.

"Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification."  *Tate v. WJL Equities Corp.*, No. 13 Civ. 8616, 2014 WL 2504507, *2 (S.D.N.Y. June 3, 2014) (ordering that the defendants "must produce the names, mailing addresses, email addresses, telephone numbers, and dates of employment for all members [of the potential collective]").  In *Lijun Geng*, the Southern District of New York ordered that the defendants provide the plaintiffs with essentially an identical set of information as that requested by Plaintiffs.  *See Lijun Geng*, 2019 WL 4493429, at *21.  Due to Plaintiffs' request for expedited information, the Court will also order that this list be provided to Plaintiffs within fifteen days from the entry of the order.  This time period is consistent with other courts in the Second Circuit.  *See, e.g.*, *Khamsiri*, 2012 WL 1851507, at *2.

Accordingly, the Court orders that Defendants provide Plaintiffs with a computer-readable list of the names, mailing addresses, telephone numbers, email addresses, social media usernames, work location, employment dates, and employment position of all cooks, kitchen workers, waiters, fry woks, packers, and deliverymen employed by Defendants from February 9, 2014, to the present within fifteen days of the entry of the order, consistent with the temporal scope and limited job categories that the Court orders for conditional collective certification.  Defendants

need only produce employee e-mail addresses and social media usernames to the extent that such

information is in Defendants' possession, and Defendants' inability to furnish such information

may not be cited by Plaintiffs as a reason for the Court to order publication at Defendants' expense

should Plaintiffs choose to renew their request for publication after production of contact

information and dispersal of notice.  *See Lijun Geng*, 2019 WL 4493439, at *21.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion to conditionally certify an FLSA collective action is

**GRANTED IN PART** and **DENIED IN PART**; and the Court further

**ORDERS** that the issuance of notice to the collective is authorized, limited to cooks,

kitchen workers, waiters, fry woks, packers, and deliverymen employed by Defendants in the three

years preceding the filing of Plaintiffs' complaint, as set forth in the accompanying Order; and the

Court further

**ORDERS** that Plaintiffs' request for equitable tolling of the statute of limitations is

**DENIED without prejudice**; and the Court further

**ORDERS** that Defendants shall produce in electronic format the contact information,

consistent with the foregoing decision, for all cooks, kitchen workers, waiters, fry woks, packers,

and deliverymen employed by Defendants from February 9, 2014 to present.

**IT IS SO ORDERED.**

Dated: March 3, 2020
Albany, New York

Mae A. D'Agostino
U.S. District Judge

28