**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**XUE HUI ZHANG, YUE HUA CHEN, and**
**GUI YONG ZHANG,**
on behalf of themselves and others similarly situated,

                                        **Plaintiffs,**

          **vs.**                                                    **1:17-CV-148**
                                                                     **(MAD/TWD)**
**ICHIBAN GROUP, LLC,**
**ICHIBAN FOOD SERVICES, INC.,**
**d/b/a Ichiban Japanese and Chinese Restaurant,**
**CHEN & JU, INC. d/b/a Takara,**
**DAVID IP,**
**LIPING JU,**
**and TYNG QUH JU,**

                                        **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**TROY LAW, PLLC**                            **JOHN TROY, ESQ.**
41-25 Kissena Blvd. Ste. 110                  **AARON B. SCHWEITZER, ESQ.**
Flushing, New York 11355
Attorneys for Plaintiffs-Counter Defendants

**MANN LAW FIRM, PC**                         **MATTHEW J. MANN, ESQ.**
426 Troy-Schenectady
Latham, New York 12110
Attorneys for Defendants-Counter Claimants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On February 9, 2017, Plaintiff Xue Hui Zhang commenced the instant proceeding as a

putative collective and class action alleging various federal and state labor law violations against

Defendants Ichiban Group, LLC, Ichiban Food Services, Inc., Chen & Ju, Inc., David L. Ip,

Liping Ju, and Tyng Quh Ju ("Defendants"). *See* Dkt. No. 1. The complaint was later amended

to include two additional plaintiffs, Yue Hua Chen and Gui Yong Zhang, as proposed

representatives. *See* Dkt. No. 89.  On March 3, 2020, this Court conditionally granted

certification relative to the Fair Labor Standards Act ("FLSA") collective claims pursuant to 29

U.S.C. § 216(b).  *See* Dkt. No. 173.  Thereafter, on May 21, 2021, this Court conditionally

granted class certification as to the state law claims under Rule 23 of the Federal Rules of Civil

Procedure.  *See* Dkt. No. 201.  Currently pending before the Court are Defendants' motions for

summary judgment (Dkt. No. 252) and class decertification (Dkt. No. 295).   For the reasons set

forth below, Defendants' motions are granted.

## II. BACKGROUND

**A.      Relevant Undisputed Facts**[1]

### 1. Defendants

Defendant Ichiban Food Services Inc. ("Ichiban Inc.") is a former business corporation

that, for about a decade until May 15, 2016, operated a restaurant known as Ichiban Japanese and

Chinese Restaurant ("Ichiban Restaurant") at 1652 Western Avenue, Albany, New York.  *See*

Dkt. No. 255-11 at ¶ 15.  Defendant David Ip ("Defendant Ip") owned a quarter interest in Ichiban

Inc. and "oversaw the day to day operations." *Id.* at ¶ 17.

Defendant Ichiban Group LLC ("Ichiban LLC") was and remains a limited liability

company incorporated in the State of New York.  *See* Dkt. No. 252-2 at ¶ 7.  There are four LLC

members, including Defendant Ip.  *See id.* at ¶ 9; Dkt. No. 255-11 at ¶ 21.  Since February 2011,

---

[1] The Court has deemed the following facts to be undisputed based on the admissible record evidence and the parties' factual contentions.  It is troubling that counsel for Defendants failed to provide numbered paragraphs in their Statement of Material Facts (Dkt. No. 252-4), as required by Local Rule 56.1.  As such, the Court will cite to Defendants' response and, where appropriate, the record evidence directly.  Counsel for Defendants is directed to review the Local Rules closely to avoid blatant oversights.

Ichiban LLC has not directly employed any individuals.  *See* Dkt. No. 252-2 at ¶ 9.  Ichiban LLC

owns and leases a real estate property located at 1652 Western Avenue—the site of the former

Ichiban Restaurant.  *See* Dkt. No. 252-2 at ¶¶ 7-8; Dkt. No. 252-32.  Ichiban LLC collects rent

and pays debts, including the mortgage, taxes, and insurance.  *See* Dkt. No. 252-2 at ¶ 9.

In May 2016, Ichiban Inc. and Ichiban LLC entered into a written agreement with

Defendant Chen & Ju Inc. ("Chen & Ju Inc.").  *See* Dkt. No. 252-30.  According to the agreement,

Chen & Ju Inc. would begin operating the former Ichiban Restaurant under the name "Takara."

Dkt. No. 255-11 at ¶ 16; Dkt. No. 252-3 at ¶¶ 7-8; Dkt. No. 252-30.  Chen & Ju Inc. purchased

equipment and other assets from Ichiban Inc. and leased the 1652 Western Avenue property from

Ichiban LLC.  *See* Dkt. No. 252-3 at ¶ 22.  Chen & Ju Inc. was to pay $7,000.00 or $7,500.00 in

rent each month.  *See* Dkt. No. 255-2 at 33.

Chen & Ju Inc. was a business corporation owned by Defendants Tyng Quh Ju and Liping

Ju.[2]  Dk. No. 252-3 at ¶ 8.  Although Chen & Ju Inc. had existed since February 2014, it had

"engaged in a completely different type of business enterprise."  *Id.* at ¶ 8.  Initially, Defendants

Tyng Quh Ju and Liping Ju oversaw Takara's daily operations.  *See* Dkt. No. 255-11 at ¶ 18.

Together, they "remodeled" and "revamped" the restaurant, "commission[ing] new menus" to

"meet [their] new image."  Dkt. No. 252-3 at ¶ 9; *see also* Dkt. No. 252-2 at ¶ 33;  Dkt. No. 252-

37; Dkt. No. 252-38.  Chen & Ju Inc. " invited any qualified person to apply for employment[,]"

hiring some employees who had worked at Ichiban Restaurant and some who had not.  *Id.* at ¶¶

13-14; *see also* Dkt. No. 252-52; Dkt. No. 252-53.  Plaintiffs did not work or apply for

employment at Takara.  *See* Dkt. No. 252-3 at ¶ 15.

---

[2]  Defendant Ip is Defendant Liping Ju's "husband's sister's boyfriend."  Dkt. No. 255-3 at
12.

In 2018, Chen & Ju Inc. filed for bankruptcy and ceased operating Takara.  Dkt. No. 252-3 at ¶¶ 1, 17.  A final decree issued on July 9, 2019, in the United States Bankruptcy Court Northern District of New York.  *See* Dkt. No. 252-36.  The leave for the 1652 Western Avenue property "was avoided in the bankruptcy."  Dkt. No. 252-2 at ¶ 8.  Indeed, since Takara's closing in 2018, Defendant Ip and/or Ichiban LLC has leased the property to at least two different restaurants.  *See* Dkt. No. 252-2 at ¶¶ 8-9.

### 2. *Yue Hua Chen*

Plaintiff Yue Hua Chen ("Plaintiff Chen") worked as a "waitress" for various periods of time at Ichiban Restaurant—namely: from about November 1, 2009, through about October 4, 2011; from about November 19, 2011, through about December 30, 2013; and from about February 27, 2014, through about December 7, 2015.  Dkt. No. 255-11 at ¶ 12.  Plaintiff Chen worked eleven hours a day, six days a week from 10:30 a.m. to 10:00 p.m., every Monday through Thursday, with an additional twelve hours on Fridays, and eleven and a half hours on Saturdays.  *See* Dkt. No. 252-23 at ¶ 6.  On Sundays, she would work ten and a half hours.  *See id.*

From at least February 2014 to December 2015, once a month Plaintiff Chen received $500.00 in cash as wage compensation.  *See* Dkt. No. 252-23 at ¶ 9.  Additionally, she received daily tips from customers, which the other waiters and waitresses shared.  *See id.* at ¶¶ 41-47.  The tips were divided "equally" every night.  Dkt. No. 252-14 at 145.  According to Plaintiff Chen, her daily tip share was "normally . . . between sixty dollars ($60) to one hundred dollars ($100)[.]"  Dkt. No. 252-23 at ¶ 42; *see also* Dkt. No. 252-14 at 147.  The highest amount of daily tips she received "was on Christmas reaching two hundred dollars ($200)."  Dkt. No. 252-53 at ¶ 41.  On the other hand, "[w]hen business was bad like in snow days, the tips were just thirty

4

dollars ($30) a day[.]"  *Id.*; *see also* Dkt. No. 252-14 at 147.

Plaintiff Chen also received daily meals and lodging as part of her compensation.  *See* Dkt. No. 252-14 at 144.  For instance, employees received breakfast, lunch, and dinner, often fixed at designated times throughout the day.  *See* Dkt. No. 255-2 at 105-106; Dkt No. 252-20 at 14-15, 50-51.  The lodging consisted of "dormitory" rooms at a suburban house located a few minutes' walking distance from the restaurant.  Dkt. No. 252-14 at 41, 144; Dkt. No. 252-24 at ¶¶ 25-29.  Throughout her employment, Plaintiff Chen would be lodged with anywhere between ten and seventeen other employees.  *See* Dkt. No. 25-24 at ¶¶ 28-29.  Plaintiff Chen did not pay rent; nor was any money for lodging taken from her wages.  *See* Dkt. No. 252-14 at 41.  The approximate value of the housing was about one thousand dollars a month, or $33.00 per day.  *See* Dkt. No. 252-14 at 144; Dkt. No. 252-2 at ¶ 20.

### 3. *Xue Hui Zhang*

Plaintiff Xue Hui Zhang ("Plaintiff X. Zhang") worked as a "cook" at Ichiban Restaurant from about November 20, 2008, to December 7, 2015.  Dkt. No. 255-11 at ¶ 11.  During that period, Plaintiff X. Zhang would work eleven and a half hours from 10:30 a.m. to 10:00 p.m., every Monday through Thursday, except generally for Tuesday.  *See* Dkt. No. 252-21 at ¶ 7; Dkt. No. 252-22 at ¶¶ 8-9.  On Saturdays, he would work twelve hours from 11:00 a.m. to 11:00 p.m.  *See id.*  And on Sundays, he would work ten and a half hours from 11:00 a.m. to 9:30 p.m.  *See id.*  Thus, in total Plaintiff X. Zhang "would work for about sixty-nine and a half (69.5) hours a week."  *Id.* at ¶ 8.  From at least February 2014 to May 31, 2014, Plaintiff X. Zhang received $2,800.00 once a month as compensation.  *See id.* at ¶ 11.  Thereafter, from June 1, 2014, to December 7, 2015, he was paid $3,000.00 once a month.  *See id.* at ¶ 12.  During his employment, Plaintiff X. Zhang also received the same meals and lodging as Plaintiff Chen.  *See id.* at ¶¶ 27-

32.

### 4. Gui Yong Zhang[3]

According to Plaintiff Gui Yong Zhang ("Plaintiff G. Zhang"), he worked as a "fry wok" for an initial three months from about March 1, 2013, through about June 30, 2013, and again for a four-month stretch from about September 1, 2014, through about December 13, 2014. Dkt. No. 255-11 at ¶ 13. Plaintiff G. Zhang asserts that he worked eleven and a half hours every Sunday, Monday, Wednesday, and Thursday from 10:30 a.m. to 10:00 p.m., and twelve and a half hours every Friday and Saturday, from 10:30 a.m. to 11:00 p.m. *See* Dkt. No. 252-25 at ¶ 7. Plaintiff G. Zhang had Tuesdays off. *See id.* From September 1, 2014, to December 31, 2014, Plaintiff G. Zhang "was paid a flat compensation of two thousand nine hundred dollars ($2900) a month, regardless of hours worked." *Id.* at ¶ 10. He received this payment once a month. *See id.* at ¶ 11.

### B. Procedural History

In light of this case's lengthy and complicated procedural history, the Court will briefly address and summarize the operative complaint and remaining claims, and will refer the parties to previous Memorandum-Decision and Orders for a more comprehensive background. *See* Dkt. Nos. 18, 63, 74, 173, 201. At present, the (second) amended complaint (Dkt. No. 89), as conformed to subsequent stipulations regarding the parties' correct names and case captioning (Dkt. No. 246), constitutes the operative pleading. That complaint sets forth two claims under the Fair Labor Standards Act ("FLSA") concerning minimum wage and overtime violations (Dkt. No. 89 at ¶¶ 91-94, 100-107), two similar claims under the New York Labor Law ("NYLL") (*id.* at ¶¶ 95-99, 108-112), and four claims for violations of New York's "Spread of Time Pay," "Wage and

---

[3] Defendants contend that Plaintiff Gui Yong Zhang never worked at Ichiban Restaurant. *See* Dkt. No. 252-5 at 2. However, for the purposes of this motion only Defendants assert that, even when assumed as true, his allegations do not warrant relief. *See id.*

Notice," "Pay Stub," and "Record-Keeping" requirements (*id.* at ¶¶ 113-129).  In their answer to the operative complaint, Defendants asserted a counterclaim alleging a "scheme to defraud" and a counterclaim seeking "counsel fees, costs, and disbursement pursuant to 42 U.S.C. § 1988."  Dkt. No. 112 at ¶¶ 84-111.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exists, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must

demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**B.     FLSA**

Congress enacted the Fair Labor Standards Act ("FLSA") of 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (footnote omitted). To that end, the FLSA requires covered employers to pay employees a minimum wage and to compensate non-exempt employees at a premium rate for all hours worked in excess of forty per week. *See* 29 U.S.C. §§ 206 and 207. Generally, to establish liability under the FLSA "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker*, 643 F.3d 352, 363 (2d Cir. 2011) (citations and footnote omitted). Furthermore, "a plaintiff must show that he or she is an 'employee' of the defendant within the meaning of the FLSA and that the defendant is an 'enterprise engaged in commerce.'" *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 206(a), 207(a); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014)).

**C.     Statute of Limitations**

The statute of limitations for an FLSA wage claim is two years unless the employer's conduct is "willful," in which case a three-year limitation applies. 29 U.S.C. § 255(a). In drawing every reasonable inference in favor on the non-moving parties, the Court will analyze

Plaintiffs' FLSA claims through a three-year window.  Considering this action was commenced

on February 7, 2017, for purposes of this motion, the Court deems the FLSA claims at-issue

timely as to February 7, 2014.  All other claims preceding that date are time-barred relative to

FLSA liability only.

**D.      "Employer"**

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of

an employer in relation to an employee."  29 U.S.C. § 203(d).  "[A]n employer is subject to both

the minimum wage and overtime provisions of the FLSA if *either* (1) their employees are

'engaged in commerce' or (2) the employer is an 'enterprise engaged in commerce.'"  *Padilla v.*

*Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009) (quoting 29 U.S.C. §§ 206, 207) (emphasis

in original).  Hence, there are "two distinct types of coverage . . . [:] 'individual coverage' and

'enterprise coverage[.]'"  *Id.* (citations omitted).

In the Second Circuit, courts employ an "economic reality" test to determine whether an

individual is an employer for purposes of FLSA liability.  *Herman v. RSR Sec. Servs. Ltd.*, 172

F.3d 132, 139-40 (2d Cir. 1999).  As such, courts examine "whether the alleged employer (1) had

the power to hire and fire the employees, (2) supervised and controlled employee work schedules

or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records."  *Id.* at 139 (citations and internal quotations omitted).  Additionally,

Sections 206 and 207 of the FLSA "provide for enterprise coverage under the FLSA if an

employer is an 'enterprise engaged in commerce.'"  *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 300

(E.D.N.Y. 2009) (quoting 29 U.S.C. §§ 206, 207).  "Enterprise coverage applies when an

employer, *inter alia*, grosses at least $500,000 in annual sales."  *Id.* (citing 29 U.S.C. §

203(s)(1)(A)(ii)) (footnote omitted).  Where ownership is in question, such as with a business sale

or merger, a finding of "successor liability" among the alleged enterprise parties may be warranted. *See Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400-410 (S.D.N.Y. 2012) (discussing applicable "successor liability" as to an FLSA "employer" at summary judgment stage).

Defendants assert that Ichiban Inc. "is the corporate entity which operated Ichiban Restaurant." Dkt. No. 252-5 at 2. They assert that Ichiban LLC "is a real estate management company which owns 1652 Western Avenue, Albany, which was leased by [Ichiban Inc.] for operation of Ichiban Restaurant and later to Chen and Ju Inc for the operation of Takara[.]" *Id.* Additionally, Defendants state that Chen & Ju, Inc. "purchased the equipment, lease, name and good will of Ichiban Restaurant" but ultimately "elected not to reopen Ichiban" and instead "opened a new restaurant with [a] different menu called Takara." *Id.* (citations omitted). Defendants assert that "[e]ach of the Plaintiffs have acknowledged that they did not work for" Ichiban LLC or Chen & Ju Inc. *Id.* (citations omitted). Defendants note that, following Takara's closure, the property held by Ichiban LLC "has been rented to a Mexican restaurant and is currently leased to an Indian restaurant[.]" *Id.* at 3 (citation omitted). Defendants also contend that neither Ichiban LLC nor Chen & Ju Inc. engaged in business exceeding $500,000.00 under the FLSA's enterprise coverage during the relevant periods. *See* Dkt. No. 252-5 at 3.

Plaintiffs assert that Defendants' contentions are largely "immaterial to a claim of successor liability" and that "there are triable issues of fact" as to what entities or individuals constitute successor(s) to Ichiban Inc. Dkt. No. 256 at 6-11. More specifically, Plaintiffs assert that under the doctrine of successor liability a plaintiff need not work directly for successor defendant. *See id.* at 6-7. Plaintiffs argue that there are issues of fact "as to whether the transaction between Chen & Ju, Inc. and [Ichiban Inc.] was entered into fraudulently so that the

latter could escape its obligations." *Id.* at 7.  Plaintiffs contend that "while on paper Chen & Ju, Inc. and [Ichiban Inc.] had different shareholders, in practice they both were entirely controlled by David Ip, either directly or through and with his family members." *Id.*  According to Plaintiffs, Ichiban Inc. "was under investigation by the New York Department of Labor while the contract of sale was being negotiated, drafted, and signed, and was still under investigation by the closing date" and that "the sales agreement contained an affirmative and misleading statement, designed to induce the buyer to enter into the agreement, that there was no pending litigation[.]" *Id.*  Plaintiffs add that "the sales documents make it clear that Chen & Ju, Inc. acquired all the assets of [Ichiban Inc.], including 'furniture and fixtures; equipment . . . , supplies and inventory, goodwill, cash on hand and in the bank, [and] accounts receivable." *Id.* at 7-9 (citations omitted). Plaintiffs assert that Ichiban Inc. employees "continued to work for Chen & Ju, Inc. without interruption[.]" *Id.*  Taken together, Plaintiffs assert that Ichiban Inc. and Chen & Ju "reported $618,580.00 in gross receipts or sales" in 2016. *Id.*

Similarly, Plaintiffs assert that "[t]here are triable issues as to whether [Ichiban Inc.] and [Ichiban LLC] were part of a single enterprise during Plaintiffs' employment." Dkt. No. 256 at 10.  Plaintiffs state that "[b]oth entities were owned by the same individuals, and were managed by David Ip." *Id.*  Plaintiffs note that "[b]oth entities were 'sellers' in the transaction that saw [Ichiban Restaurant] sold to Chen & Ju, Inc. so it could become Takara." *Id.*  Finally, Plaintiffs reassert that "[i]t is not any particular entity that must have more than $500,000.00 and engage in commerce, but the 'enterprise.'" *Id.* at 11 (citation omitted).

Herein, the record evidence reveals that are material factual disputes as to which Defendants are employers as defined by the FLSA.  Because the Court cannot resolve this issue based on the record before it, the analysis within this Memorandum-Decision and Order is

applicable to each Defendant.

**E.     Minimum Wage, Tip Credit, and Overtime**

The minimum hourly wage that FLSA-covered employers must pay their employees is set

forth in 29 U.S.C. § 206(a)(1)(c).  From February 2014 to December 2015, the federal minimum

wage was $7.25 per hour.  Notwithstanding, the FLSA permits employers to compensate "tipped"

employees at an hourly rate lower than the minimum wage by crediting a portion of their tips.  29

U.S.C. § 203(m)(2).  "To be eligible to take a tip credit, however, the employer must satisfy

certain prerequisites.  Preliminarily, he must inform the employee of the statutory requirements

governing tip credits."  *Kim v. Kum Gang, Inc.*, No. 12-CV-6344(MHD), 2015 WL 2222438, *23

(S.D.N.Y. Mar. 19, 2015) (discussing 29 U.S.C. § 203; 29 C.F.R. § 531.59).  More specifically:

> Pursuant to [29 U.S.C. § 203(m)(2)(A)], an employer is not eligible
> to take the tip credit unless it has informed its tipped employees in
> advance of the employer's use of the tip credit of the provisions of
> [§ 203(m)(2)(A)], i.e.: The amount of the cash wage that is to be
> paid to the tipped employee by the employer; the additional amount
> by which the wages of the tipped employee are increased on
> account of the tip credit claimed by the employer ,which amount
> may not exceed the value of the tips actually received by the
> employee; that all tips received by the tipped employee must be
> retained except for a tip pooling arrangement limited to employees
> who customarily and regularly receive tips; and that the tip credit
> shall not apply to any employee who has not been informed of the
> requirements in this section.

29 C.F.R. § 531.59(b).

Importantly, "[u]nder the FLSA, an employer may not claim a tip credit as to an

employee's wages unless the employer has informed that employee of the provisions of the

section on the FLSA permitting the tip credit."  *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp.

3d 490, 497 (S.D.N.Y. 2015) (citing 29 U.S.C. § 203(m)).  Although this provision is "strictly

construed," and "normally requires that an employer take affirmative steps to inform affected

employees of the employer's intent to claim the tip credit," *id.* (collecting cases), the FLSA "does not require that the notice be given in writing," *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 501 (S.D.N.Y. 2017) (quotations and alteration omitted).  In any event, "[t]he employer 'bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement by, for example, providing employees with a copy of 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law."[4]  *Inclan*, 95 F. Supp. 3d at 497 (citations omitted).  Ultimately, "[i]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage[.]"  *Id.* (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) (internal quotations omitted)).

In addition to the minimum wage, the FLSA requires employers to pay certain non-exempt employees a premium hourly wage for all hours worked in excess of forty hours per week, *i.e.*, "overtime."  *See generally* 29 U.S.C. §§ 201, *et. seq*.  To establish an unpaid overtime claim, the plaintiff must show "40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)).  In general, the overtime compensation must reflect "a rate not less than one and one-half times the regular rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  The "regular rate" is calculated by "dividing an employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked."  *Villanueva v. 179 Third Avenue Rest, Inc.*, 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020) (citations and internal quotations omitted); *see*

---

[4]   The FLSA requires employers to display federal minimum wage posters in English and in an employee's native language.  Approved posters must include, *inter alia*, the minimum wage amount and information about tip credits and enforcement procedures.  *See* 29 C.F.R. § 516.4.

*also* 29 C.F.R. § 778.109.

Furthermore, in determining whether FLSA minimum wage and overtime requirements have been met, an employer may "credit" the reasonable costs "of board, lodging, or other facilities customarily furnished" to its employees.  29 C.F.R. § 531.27.

**F.      Plaintiffs' FLSA Claims[5]**

In their motion, Defendants contend that Plaintiffs "received more than the FLSA minimum wage and overtime."  Dkt. No. 252-5 at 9.  Defendants assert that 29 C.F.R. § 531 "allows the reasonable value of meals and lodging to be added as additional wages" and that, when considering the value of meals and lodging provided to each Plaintiff, no FLSA violation occurred.  *Id.*  Defendants also note that Plaintiff Chen received approximately $50.00 in daily tips, which they argue must be included into her total wage calculation.  *See id.*

Defendants admit that they lack any contemporaneous business records reflecting, *inter alia*, the hours worked by, and the wages paid to, all employees prior to 2015.[6]  However, Defendants have submitted computations reflecting the hours worked and wages owed according to each Plaintiff's allegations and record testimony.  *See* Dkt. No. 252-43; Dkt. No. 252-45.  Overwhelmingly, Defendants argue that, even based on Plaintiffs' own approximations, the record evidence reflects that no FLSA violations occurred.

In opposition, Plaintiffs acknowledge that "[i]t is uncontroverted for purposes of this motion that Plaintiffs all worked substantially in excess of 40 hours per week, and were paid

---

[5]  In a previous filing, Plaintiff G. Zhang conceded that his FLSA claims are time-barred.  *See* Dkt. No. 49 at 7.

[6]  According to Defendant Ip, Ichiban Restaurant "suffered a devastating waste pipe break in the restaurant's storage area which made the paper documents unsanitary to retain."  Dkt. No. 252-2 at ¶ 15.

monthly salaries." Dkt. No. 256 at 11.  Plaintiffs assert that "it is of no moment whether or not these salaries compensated Plaintiffs for more than they would have made had they been paid minimum wage on an hourly basis[.]" *Id.*  Plaintiffs state that "the regular rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate" and that it is presumed "that a weekly salary covers 40 hours" unless "the employer can rebut the presumption by showing an employer-employee agreement that the salary covers a different number of hours." *Id.* (citation and internal quotations omitted).  Plaintiffs assert that the absence of employee time and records "show[s] that Defendants did not intend to pay Plaintiffs for all of their hours and thus they cannot rebut the presumption that they intended to pay Plaintiffs for 40 hours." *Id.* at 12.

Furthermore, according to Plaintiffs—albeit without any cited authorities—because Defendants failed to maintain "accurate and complete records," they "need only submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred[.]" Dkt. No. 256 at 12.  Also according to Plaintiffs, "[i]f an employee makes this showing, the burden then shifts to the employer to come forward (i) with evidence of the precise amount of work performed or (ii) with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence." *Id.*  Plaintiffs assert that absent such a showing, they are entitled to damages corresponding to their alleged approximations.  *See id.*

Herein, after carefully considering the parties' contentions, and following a scrupulous review of the entire record evidence, the Court finds that there is no evidence supporting an FLSA violation relative to either Plaintiff Yue Hua Chen or Xue Hui Zhang as discussed as follows.

Plaintiff Chen is the only tipped employee asserting claims under the FLSA.  To support summary judgment, Defendant Ip submitted a sworn affidavit averring that all employees

"received notice of their pay upon commencement of employment.  It was handwritten and in the Chinese language."  Dkt. No. 252-2 at ¶ 27.  Moreover, Defendants have submitted affidavits from over a dozen individuals eligible for the FLSA collective and employed around the same periods as Plaintiffs.  *See* Dkt. No. 252-41.  These former employees assert that they "were told [their] wages, [their] hours, the deductions and the total amount received."  Dkt. No. 252-41 at 4.  Similarly, Defendant Ip and the affiants all assert that "[t]he required Department of Labor postings were in employee [sic] breakroom in the basement."  Dkt. No. 252-2 at ¶ 28; Dkt. No. 252-41.  While Defendants have not produced records reflecting any "written" notices provided to employees, Defendant Ip represents to the Court in sworn testimony that he is unable to produce "payroll records" due to a "devastating waste pipe break in the restaurant's record storage area which made the paper documents unsanitary to retain."  Dkt. No. 252-2 at ¶ 15.

The record before the Court indicates that Defendants adequately informed employees as to the credits taken against the minimum and overtime wage requirements.  For instance, the Court finds no *genuine* dispute as to whether Defendants had a Department of Labor poster prominently displayed in the employee breakroom with information about minimum wage and overtime requirements, in English and Chinese.  In an affidavit previously submitted to the Court—relied upon extensively by Defendants— Plaintiff Chen averred that she "did not receive a written notice saying what [her] pay rate would be, or that Ichiban was paying [her] less than the minimum wage with the difference between [her] pay and the minimum wage to be made up with tips."  Dkt. No. 252-24 at ¶ 6.  Additionally, she averred that throughout her employment, she "never saw any posted notice regarding the minimum wage or any other labor law at Ichiban."  *Id.* at ¶ 7.  However, the following exchange took place during Plaintiff Chen's deposition:

> Q.  Were there any employment notices posted in the building?

> A.  I didn't pay attention.
>
> Q.  Did you ever see a poster on the basement stairwell?
>
> A.  I didn't pay attention.
>
> Q.  So, is your answer you don't recall seeing one?
>
> A.  I didn't see.  I forgot.

Dkt. No. 252-14 at 73-74.

Similarly, at Plaintiff X. Zhang's deposition, when defense counsel asked "Was there an employee room at Ichiban, or a place where posters and things were in Ichiban that had some posters on it, the government notice posters?"  Plaintiff X. Zhang responded, "I forgot."  Dkt. No. 252-16 at 76.  Likewise, when asked, in no uncertain terms, whether he was "ever given any written documents while working at Ichiban?"  Plaintiff X. Zhang responded "I don't know.  I forgot."  Dkt. No. 252-16 at 77.  Yet the affidavits from employees eligible for the FLSA collective all report seeing the postings, which set forth the required information pertaining to, *inter alia*, FLSA wage requirements.  *See* Dkt. No. 252-41. These former employees also indicate that Defendants provided written notice informing them of their wages and rate of pay.  *See id.* Even when viewing the matter in a light most favorable to Plaintiffs, at best the record evidence indicates that even though Plaintiffs evidently cannot remember receiving any notice regarding the FLSA, Defendants complied with their obligations in providing as much.  Under the unique circumstances of this case, no reasonable juror could find otherwise.  *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (affirming summary judgment in favor of defendants where, "even after drawing all inferences in the light most favorable to the plaintiff," there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony").

As referenced previously, the minimum FLSA wage during the relevant time period was $7.25, and that the corresponding overtime rate for minimum wage was $10.88 ($7.25 x 1.5). Thus, as non-exempt hourly employees working sixty-nine and a half hours each week, Plaintiffs were entitled to at least $610.96 (($7.25 x 40 hours) + ($10.88 x 29.5 hours)) in each seven-day period. *See* 29 U.S.C. § 203(m). But, because Plaintiff Chen was a tipped employee, Defendants were permitted to apply a tip credit, so long as her hourly wage totaled at least $7.25. Similarly, Defendants were entitled to include the value of the meals and lodging provided to both Plaintiffs. On the whole, if Plaintiffs had received anything less than $610.96 in weekly remuneration—inclusive of tips, meals, and lodging—Defendants would be liable for an FLSA violation. That is not the case.

According to the record evidence, Plaintiff Chen averaged around $50.00 a day in tips—six days a week—for a total weekly average of $300.00. This total weekly amount equates to approximately $4.32 per hour in tips. Thus, to meet the $7.25 hourly minimum, Defendants were required to pay Plaintiff Chen at least $2.93 for the first forty hours worked and $6.56 for the additional twenty-nine and a half overtime hours. To put it another way, Defendants were required to pay Plaintiff Chen each week $117.20 for the first forty hours and $193.52 for the overtime hours, for a total amount of $310.72. Using four weeks for any given monthly period for purposes of an average approximation, Plaintiff Chen was entitled to $1,242.88 a month in addition to her tips.

While Plaintiff Chen received only $500.00 in cash once a month, Defendants provided her with lodging valued at one thousand dollars per month, or $33.00 per day. Defendants also provided Plaintiff Chen with daily meals, which Defendants argue should be included into the total remuneration paid for FLSA purposes. *See* Dkt. No. 252-22 at ¶ 22. However, despite

arguing that meals should be included into the wage calculation, Defendants have failed to point to any record evidence supporting the value of the supposed meals. Thus, in viewing the matter most favorable to Plaintiffs as the non-moving party, the Court has excluded the value of any alleged meals for purposes of determining FLSA liability. Nonetheless, including lodging, Plaintiff Chen's total remuneration each month equaled approximately $1,500.00—not including tips. Under the circumstances, it cannot be said that Defendants failed to pay Plaintiff Chen the minimum wage and overtime when factoring in the tip credits and the cash value of lodging.

Plaintiff X. Zhang asserts that he received $3,000.00 each month for working sixty-nine and a half hours each week. *See* Dkt. No. According to the minimum FLSA wage rate for 2015, Plaintiff X. Zhang was entitled to $7.25 for each hour worked in a given week. For any hours worked over forty, Plaintiff X. Zhang was entitled to "time-and-a-half", *i.e.*, $7.25 x 1.5. In this case, that equates to $10.88 for every hour worked over forty. Said differently, Plaintiff X. Zhang was entitled to forty hours paid at $7.25 ($290), plus twenty-nine and a half hours paid at $10.88 ($320.96), for a total of $610.96 per week. Under the circumstances, if Plaintiff X. Zhang was paid $3,000.00 per month, in addition to the $1,000.00 lodging value, then there was no failure by Defendants to pay minimum wage or overtime under the FLSA.

The Court notes that nearly all of Plaintiffs' arguments concerning the substantive FLSA claims miss the mark. Plaintiffs argue that because Defendants failed to keep records, they are entitled to their estimated approximations. *See* Dkt. No. 256 at 12-14. But this fails to acknowledge Defendants' contentions that even their approximated wages, as reflected in the uncontroverted record evidence, fail to show that Plaintiffs were not paid correctly. In their memorandum of law, Plaintiffs make nearly no attempt to engage with the fact that Plaintiff Chen's monthly $500.00 cash payment, her average $50.00 in daily tips, and her $33.00 per day

lodging value satisfy the FLSA's minimum wage and overtime requirements in this case.  In light of the uncontroverted record evidence showing that Plaintiffs each received more than the minimum wage and corresponding overtime rates, Defendants are entitled to summary judgment.

Accordingly, Plaintiffs' FLSA minimum wage and overtime claims are without merit and must be dismissed.

## G.    Decertification

In FLSA cases, a collective certification involves two steps: "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs[.]"  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  Thereafter, "[a]t the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" *Id.*  At that stage,  "[t]he action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*  "In contrast to the lenient standard required for conditional certification of a collective action under the FLSA" the court "must apply a more stringent standard in considering [the defendant's] motion for decertification." *Tracy v. NVR, Inc.*, 293 F.R.D. 395, 398 (W.D.N.Y. 2013).

In their motion for summary judgment, Defendants asserted that "[w]here the Court dismissed the cause of action raised by the named Plaintiffs in class action, the case should be dismissed in its entirety as the class action hinges on the merits of the cases of the named and allegedly similarly situated Plaintiffs."  Dkt. No. 252-5 at 15.  Thereafter, with permission from the Court, Defendants filed a "supplemental" motion seeking decertification, with more fully developed arguments as to why decertification should be granted.  *See* Dkt. Nos. 294, 295.

In their supplemental motion, Defendants assert that decertification is proper based on the lack of numerosity and typicality. *See* Dkt. No. 295-1 at 2-6. Defendants state that since this Court certified the class and collective, "22 of the 43 have affirmatively opted out" and that "the Court has deemed another 20 of the remaining 21 to have opted out[.]" *Id.* at 2. Furthermore, Defendants speculate that the single remaining class member "probably did not receive the notice as the address information in [D]efendants' possession was several years old." *Id.*

Plaintiffs oppose the motion for decertification. *See* Dkt. No. 297. As an initial matter, Plaintiffs assert that the supplemental motion fails to comply with Local Rule 56.1 as it does not include a Statement of Material Facts. *See id.* at 8-9. Furthermore, Plaintiffs ask this Court to "reconsider its decisions to deem certain class members opted out." *Id.* at 9. For instance, Plaintiffs ask the Court to "reconsider its decision to ratify the untimely opt-out of Li Jian Jiang," who returned his opt-out notice over two weeks after the deadline expired. *Id.* at 9-10. Moreover, Plaintiffs assert that "the Order authorizing dissemination of notice did not authorize dissemination by publication, but only by the methods set forth in the class list: mailing address; direct message on social media; email; and by telephone (call and text message)." *Id.* at 12. As such, Plaintiffs ask the Court to reconsider its prior decision to deem twenty proposed members to have opted out. *See id.* In any event, Plaintiffs assert that "numerosity is still met" because "the class would be twenty-five members strong: the three named Plaintiffs; the three directly-noticed class members who did not op out . . . ; Mr. Jiang who opted out untimely; and eighteen class members who were not directly mailed or text-messaged noticed, and did not opt out[.]" *Id.* at 14.

Herein, the Court finds that decertification is warranted as to the FLSA collective and the Rule 23 class certifications. Considering the opt-outs and the testimony from former employees eligible for the class and collective, it is clear that numerosity and typicality are lacking. In any

event, as discussed herein, the record shows that many of the claims are unsupported by record evidence.

Accordingly, the FLSA collective and the Rule 23 class must be decertified.

**H.     State Law Claims**

Federal courts may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.  "A district court's decision whether to exercise . . . jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  Supplemental jurisdiction may be declined if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Finally, a court should weigh "the values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction over state-law claims.  *Carnegie-Mellon Univ. Cohill*, 484 U.S. 343, 350 (1988).

In addition to arguing against the merits of the state law claims, Defendants request that this Court should decline to exercise of supplemental jurisdiction upon dismissing "all claims over which it has original jurisdiction[.]"  Dkt. No. 252-5 at 12.  Defendants also argue that there are "other compelling reasons for declining jurisdiction" such as the "clear fraudulent filing of the FLSA in light of clear indicia of proper payment[.]"  *Id.*  In response, Plaintiffs make no discernable argument addressing why this Court should exercise supplement jurisdiction in the event all federal claims are dismissed.  *See* Dkt. No. 256.

Because all dismissed claims giving rise to original jurisdiction are dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims.  Moreover, the Court feels it necessary to note that the state law claims in this case substantially predominate over the federal claims.  Generally, whether "state law predominates" is answered by looking at "the nature of the claims as set forth in the pleading" and "whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994) (quotations omitted).  "The 'substantially predominates' standard is met if the 'state claim constitutes the real body of a case, to which the federal claim is only an appendage' and 'litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 613 F. Supp. 2d 437, 443 (S.D.N.Y. 2009) (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)).

Without making any ruling as to the substance of Plaintiffs' state law claims, the Court notes that this case is overwhelmingly driven by alleged violations of the New York Labor Law ("NYLL").  First and foremost, these claims have effectively doubled the relevant time period at-issue insofar as providing for a six-year, as a opposed to a mere two- or three-year, statute of limitations.  *See* N.Y. Lab. L. § 663.  Moreover, while the FLSA sets forth certain recordkeeping requirements for wage notices and payroll records, unlike the NYLL, there is no private right of action for alleged violations.  *See* N.Y. Lab. L. §§ 195, 198(1-b).  With respect to applying tip credits, the FLSA does not require that notice be in writing.  *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 501-502 (S.D.N.Y. 2017).  As to meal credits, NYLL caps the value of any credit applied at $2.50 per meal.  *See id.*  Furthermore, it is unclear to the Court as to whether the

test for "employer" is the same under the NYLL as it is under the FLSA.  *See Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (noting that "[n]either the New York Court of Appeals nor the Second Circuit has decided whether 'the tests for 'employer' status are the same under the FLSA and the NYLL'") (citations omitted).  Under the unique circumstances of this case, the Court declines to exercise supplemental jurisdiction, notwithstanding that all federal claims have been dismissed.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## I.    Defendants' Counterclaims

Finally, the Court notes that Defendants have failed to advance any cognizable legal theory as to their purported counterclaims.  By all indications, Defendants have effectively abandoned the counterclaims, apparently opting instead to argue against the merits of Plaintiffs' claims.  Accordingly, the Court hereby dismisses the counterclaims with prejudice.[7]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter and the applicable law, and for the above-stated reasons the Court hereby

**ORDERS** that Defendants' Motion for Summary Judgment (Dkt. No. 252) is **GRANTED**; and the Court further

**ORDERS** that all state law claims in this action are **DISMISSED** as the Court declines to

---

[7]  The Court notes that Defendants' counterclaims were couched as "fraud" claims.  While the counterclaims are dismissed with prejudice insofar as they purportedly asserted an independent claim for fraud, the instant dismissal should not be construed as barring Defendants from making a post-judgment application for fees and costs as a "prevailing party."  *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs") (citations omitted).

exercise supplemental jurisdiction; and the Court further

**ORDERS** that Defendants' Motion for Decertification (Dkt. No. 295) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 19, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge